This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant, Robert D. Cook, appeals from his convictions for attempted murder and felonious assault in the Summit County Court of Common Pleas. We affirm.
On March 1, 2001, the Summit County Grand Jury indicted Defendant on two separate counts: (1) attempted murder, in violation of R.C. 2903.02(A) and 2923.02; and (2) felonious assault, in violation of R.C. 2903.11(A)(1) and (A)(2). Each charge had a firearm specification. Prior to trial, Defendant moved to suppress all of his statements made to the police, which the trial court denied. A jury trial followed. After the State's case-in-chief and his case-in-chief, Defendant moved for acquittal pursuant to Crim.R. 29. In both instances, the trial court denied the motion. Thereafter, the jury found Defendant guilty on both counts. Following the jury's verdict, Defendant moved for a judgment of acquittal. The trial court denied Defendant's motion and, subsequently, sentenced him accordingly. Defendant timely appeals raising two assignments of error for review.
 ASSIGNMENT OF ERROR I "The verdict of the jury is against the manifest weight of the evidence.
 "The court erred in not granting [Defendant's] motion for acquittal."
In his first assignment of error, Defendant challenges the adequacy of the evidence presented at trial. Specifically, Defendant avers that his convictions for attempted murder and felonious assault were based upon insufficient evidence and against the manifest weight of the evidence. An evaluation of the weight of the evidence, however, is dispositive of both issues in this case. Defendant's assignment of error lacks merit.
As a preliminary matter, we note that sufficiency of the evidence produced by the State and weight of the evidence adduced at trial are legally distinct issues. State v. Thompkins (1997), 78 Ohio St.3d 380,386.
Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt.State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy."Thompkins, 78 Ohio St.3d at 386.
"While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion."State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3, citingThompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
"Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4.
Defendant was found guilty of attempted murder, in violation of R.C.2903.02(A) and 2923.02. A conviction for attempted murder requires proof that the accused acted purposely or knowingly and that his conduct, if successful, would have resulted in the death of another. R.C. 2903.02(A) and 2923.02. Defendant was also found guilty of felonious assault, in violation of R.C. 2903.11(A)(1) and (A)(2). R.C. 2903.11(A)(1) and (A)(2) provide in relevant part:
"(A) No person shall knowingly:
"(1) Cause serious physical harm to another[;]
 "(2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance[.]"
At trial, Marquel Wright ("Wright"), the victim, testified that he attended grade school with Defendant. He further testified that their relationship was now rocky because Defendant sold him fake crack cocaine. Wright stated that on February 8, 2001, he saw Defendant standing in line at a gas station and, shortly thereafter, he and Defendant began arguing and fighting. Following the fight, he explained that he received a telephone call from Cheriese Foster ("Foster") and she asked if he would pick her up at an apartment located at 647 North Howard Street and then drive her home. Wright testified that he agreed and proceeded to 647 North Howard Street. He stated that he was standing in the doorframe of the bathroom when someone knocked on the outside door of the apartment and asked if "Marquel" was in the apartment. Wright further stated that someone said that "Marquel" was in the apartment and the individual entered the apartment. Wright said that he saw the individual walk by the bathroom with a gun in the air and the individual said "[w]hat's up now ho ass, nigger?" He explained that as he tried to run from this individual he was shot. Wright testified that he was shot two more times and then the individual walked out of the apartment. Wright acknowledged that when the police asked him who had shot him, he did not know the individual's first name. However, he stated that he knew that his streetname was "Man."
Foster testified that she called Wright and asked him to pick her up and drive her home. She stated that when Wright arrived at 647 North Howard Street he needed to use the restroom. Foster then stated that Defendant knocked on the door of the apartment and asked for Wright, but she told Defendant that Wright was in the restroom. She explained that when Wright opened the door to the bathroom, Defendant pulled out a gun and raised it into the air. Foster testified that as Wright ran toward the back door Defendant shot him in the back. She further testified that she told Detective Lacy that "Man" shot Wright. Foster admitted that on the day of the shooting she told the police officer that "T" had shot Wright; however, she stated she does not know anyone named "T." She explained that she initially lied as to the identity of the shooter because she did not want to be a witness to the crime.
Officer Steven Sabol testified that, on February 8, 2001, he responded to a call from dispatch concerning a shooting at 647 North Howard Street. Officer Sabol stated that Wright was moaning, crying, and in shock. He further stated that when he asked Wright who had shot him, he hesitated in his response, but said it was "T." Officer Sabol also testified that Foster told him that the shooter was "T." Lastly, Officer Sabol stated that Antonio Cook's ("Antonio") streetname is "T."
Officer Brian Nida testified that he was dispatched to 647 North Howard Street regarding a shooting. He further testified that he accompanied Wright to the hospital. Officer Nida stated that Wright was upset, in a lot of pain, had difficulty breathing, and seemed "somewhat" aware of his surroundings. Officer Nida said that in the ambulance Wright stated that he did not know who shot him. Officer Nida further said that he heard a doctor ask Wright who shot him and his response was "I don't know."
Detective Washington Lacy testified that Foster was able to identify Defendant as the shooter from a photo array. He further testified regarding statements made by Defendant. Specifically, Detective Lacy stated that Defendant had told him that he and Wright were acquaintances; however, difficulties arose when he had "shorted" Wright of some drugs. Detective Lacy additionally stated that due to Defendant's belief that Wright was trying to run him over with his car, Defendant stated that he obtained a handgun and started carrying it. Detective Lacy testified that Defendant explained that on February 8, 2001, someone from the apartment flagged him down for drugs and he went to the apartment. Detective Lacy further testified that Defendant said that he was mad when he went into the apartment because Wright had been "hassling" him regarding their previous drug transaction. When he entered the apartment, Defendant told Detective Lacy that he saw Wright exiting the bathroom and pulling a knife. Therefore, Defendant explained to Detective Lacy that he shot Wright because he did not think he had any other choice.
After the State rested, Defendant presented his case-in-chief. Specifically, Defendant and his mother, Regina Cook ("Regina"), testified.
Defendant testified that on February 8, 2001, he and Wright were involved in a fight at a gas station. He stated that he was mad and angry because Wright hit him at the gas station. Defendant further stated that after the incident at the gas station, someone from the apartment called to him and asked him to come to the apartment. He stated then when he entered the apartment, Wright came out of the restroom with a knife and they began "scuffling." Defendant explained that while he and Wright were "scuffling" he heard someone say "Why you gank me, motherfucker?" and then this individual fired shots at him and Wright. Defendant testified that after he saw Wright fall, he ran out the back door of the apartment. He also stated that he saw the shooter's face, but he did not go to the police department and report that he had seen who had shot Wright. Defendant maintained that he told Detective Lacy that he had a gun and shot Wright because he did not want his brother, Antonio, to "go down for [the shooting]." He acknowledged that his nickname is "Man" and stated that Antonio does not have a nickname.
Regina stated that she and her son, Antonio, were escorted to the police department. She further testified that at the police department, Detective Tucker accused Antonio of shooting Wright. Regina then maintained that Detective Tucker said that if Antonio was not selected as the shooter in a line-up, then "they was (sic.) going to get [Defendant]."
In the case sub judice, the jury had the opportunity to view the witnesses' testimony and adjudge their credibility; therefore, we must give deference to the jurors' judgments. See State v. Lawrence (Dec. 1, 1999), 9th Dist. No. 98CA007118, at 13. Upon careful review of the testimony and evidence presented at trial, we hold that the jury did not act contrary to the manifest weight of the evidence in convicting Defendant of attempted murder or felonious assault. Consequently, we conclude that Defendant's assertion that the State did not produce sufficient evidence to support a conviction, therefore, is also without merit. Accordingly, Defendant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "The court erred in overruling [Defendant's] motion to suppress and in allowing the State to reopen their case after the State rested[.]"
In his second assignment of error, Defendant argues that the trial court erroneously (1) denied his motion to suppress; (2) allowed the State to reopen its case after it had rested; and (3) permitted testimony concerning the identification of Defendant through a photo array. Defendant's argument is not well taken.
This court notes that Defendant has failed to set forth a single, legal authority to support his contentions that the trial court erred. As such, Defendant has failed to provide citations to authorities supporting his brief and the standard of review applicable to his assignment of error as required by App.R. 16(A)(7) and Loc.R. 7(A)(6). Defendant had the burden of affirmatively demonstrating error on appeal. See Angle v.W. Res. Mut. Ins. Co. (Sept. 16, 1998), 9th Dist. No. 2729-M, at 2;Frecska v. Frecska (Oct. 1, 1997), 9th Dist. No. 96CA0086, at 4. Moreover, "[i]f an argument exists that can support this assignment of error, it is not this court's duty to root it out." Cardone v. Cardone
(May 6, 1998), 9th Dist. Nos. 18349 and 18673, at 18. Consequently, since Defendant has failed to set forth any legal error by the trial court in this assignment of error, this court has no choice but to disregard it. Accordingly, Defendant's second assignment of error is overruled.
Defendant's assignments of error are overruled. The convictions in the Summit County Court of Common Pleas are affirmed.
WHITMORE, J., BATCHELDER, J. CONCUR.